UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

EDGARDO MAURICIO
CASTILLO GAITAN,

                    Petitioner,

    v.

ANGELA HOOVER, et al.,

                    Respondents.

CIVIL ACTION NO. 3:26-CV-01087

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Edgardo Mauricio Castillo Gaitan ("Gaitan"), a citizen of Honduras, brings this *pro se* petition for writ of habeas corpus. (Doc. 1). On April 24, 2026, Gaitan filed the instant petition, arguing that the government improperly detained him under 8 U.S.C. § 1225(b)(2)(A) when they could only have detained him under 8 U.S.C. § 1226(a) and requesting that Respondents Angela Hoover ("Hoover"), Brian McShane, Todd Lyons, Markwayne Mullin, and Todd Blanche[1] release him from custody at the Clinton County

---

[1] The proper respondent in this case is Hoover, Warden of the Clinton County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Gaitan is detained at the Clinton County Correctional Facility, Hoover is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, the other defendants are **DISMISSED**. However, the government will be bound by the Court's judgment because Hoover is acting as an agent of the federal government by detaining Gaitan on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

Correctional Facility in McElhattan, Pennsylvania. (Doc. 1). On May 11, 2026, Gaitan filed a motion for a temporary restraining order and preliminary injunction ordering the government to "cease ongoing actions and refrain from taking any further actions toward effectuating [Sanchez's] removal from the United States pending the adjudication of the instant habeas petition." (Doc. 7; Doc. 8, at 2). For the following reasons, Gaitan's petition (Doc. 1) is **GRANTED**,[2] and Hoover is **ORDERED** to release Gaitan from custody.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

The following background is derived from Gaitan's petition, Hoover's response, and the exhibits thereto. (Doc. 1; Doc. 6). Gaitan is a citizen of Honduras who has lived in the United States since November 2005. (Doc. 1, at 4). On December 24, 2025, ICE encountered Hoover in Easton, Pennsylvania and detained him after he admitted he is a citizen of Honduras. (Doc. 6-2, at 4-5). Gaitan was never paroled into the country.[3] (Doc. 6-2, at 2). Gaitan is currently being detained pursuant to 8 U.S.C. § 1225(b)(2)(A) in the Clinton County Correctional Facility and is being denied a bond hearing. (Doc. 1, at 5; Doc. 6, at 16). On

---

[2] Because the Court grants Gaitan's habeas petition and provides him with the relief he seeks in his motion for a preliminary injunction, Gaitan's motion for a preliminary injunction (Doc. 7; Doc. 8) is **DENIED as moot**. *See Sutton v. City of Philadelphia*, 21 F. Supp. 3d 474, 481 (E.D. Pa. 2014) (finding that a plaintiff being released from custody mooted his request for injunctive relief); *see also Thakker v. Doll*, 451 F. Supp. 3d 358, 362 n.1 (M.D. Pa. 2020) (same); *see also Kashranov v. Jamison*, No. 2:25-CV-05555, 2025 WL 3188399, at *3 (E.D. Pa. Nov. 14, 2025) (addressing an immigration detainees' habeas petition on the merits rather than addressing the petitioner's motion for a preliminary injunction).

[3] The Court notes some inconsistencies in the government's response regarding whether Gaitan was paroled into the United States. The government states in its brief that "Petitioner was detained under 8 U.S.C. § 1225(b) and subsequently released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). When that parole was terminated, he returned to the custody from which he was paroled and is treated in the same manner as that of any other applicant for admission." (Doc. 6, at 16). However, Gaitan's immigration records show he was never paroled into the United States. (Doc. 6-2, at 4; Doc. 6-3, at 2).

April 21, 2026, Gaitan filed his petition. (Doc. 1). On April 29, 2026, the government filed a response. (Doc. 6). On May 11, 2026, Gaitan filed a motion for a temporary restraining order and preliminary injunction. (Doc. 7; Doc. 8).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Kashranov*, 2025 WL 3188399 at

*8 (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

### III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner

4

also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Correa,* 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Kashranov,* 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil,* 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Gaitan and whether Gaitan is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings,* 583 U.S. at 294; *Kahlil,* 164 F.4th at 274-79.

## IV.   DISCUSSION

Gaitan avers that as an individual residing in the United States since 2005, he may only be detained under 8 U.S.C. § 1226(a) which provides the opportunity for a bond hearing. (Doc. 1, at 5-6). Gaitan argues that because he is detained under the wrong statute, his detention violates both his statutory rights under § 1226(a) and his procedural due process rights and requests the Court order his immediate release or a bond hearing. (Doc. 1, at 11-13). Hoover counters that Gaitan is subject to mandatory detention because his detention falls squarely under 8 U.S.C. § 1225(b)(2)(A) and he is not eligible for release on bond. (Doc. 6, at 1-3, 16-40). The Court will first address whether Gaitan was properly detained under §

1225(b)(2)(A) or under § 1226(a). The Court will then address whether Gaitan's detention detention violates due process.

    A.  HOOVER IMPROPERLY DETAINED GAITAN UNDER 8 U.S.C. 1225(B)(2)(A).

Hoover improperly detained Gaitan under 8 U.S.C. § 1225(b)(2)(A), when Hoover should have detained Gaitan under 8 U.S.C. § 1226(a). (Doc. 6, at 1-3, 16-40) (stating Gaitan is detained under § 1225(b)(2)(A)). The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov,* 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Correa,* 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Correa,* 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

6

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry or immigration authorities encounter a noncitizen "within 14 days of entry without inspection and within 100 air miles of any U.S. international land border," the noncitizen is considered an "arriving alien" and is generally subject to expedited removal, unless they indicate an intention to apply for asylum. 8 U.S.C. § 1225(b)(1)(A); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Such a noncitizen is subject to detention while an immigration judge considers their asylum application; however, DHS may grant such a noncitizen parole into the United States for humanitarian purposes under 8 U.S.C. § 1182(d)(5). 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). However, Hoover avers that Gaitan is subject to mandatory detention and expedited removal under § 1225(b)(2)(A), not § 1225(b)(1). (Doc. 6, at 16).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining

immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde,* 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov,* 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov,* 2025 WL 3188399, at *6; *Soto v. Soto,* 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings,* 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov,* 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval,* No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov,* 2025 WL 3188399, at *6; *Del Cid v. Bondi,* No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.,* 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem,* No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes,* 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley,* No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez,* 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto,*

807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning. *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited May 11, 2026). On September 5, 2025, the BIA adopted the DOJ's new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are

ineligible for release on bond. *Matter of Yajure Correa*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases). The Second, Seventh, and Eleventh Circuit Courts of Appeals have similarly found that § 1226 and not § 1225(b)(2)(A) applies to noncitizens detained after residing in the country for an extended period of time.[4] *See Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250, at *21 (7th Cir. May 5, 2026); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026).

Section 1226(a), not § 1225(b)(2)(A), applies to Gaitan's detention. Gaitan should have been detained under § 1226(a) because he was arrested by immigration officers and

---

[4] The Court acknowledges that the Fifth Circuit and Eighth Circuit recently issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

detained after he had been in the United States for over 20 years. (Doc. 1, at 4); *see Jennings, 583 U.S. at 289* ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) . . . [and] to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)"); *Soto, 807 F. Supp. 3d at 403*. Section 1225(b)(2)(A) does not apply to Gaitan because Gaitan is not seeking admission into the United States, and Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez, 792 F. Supp. 3d at 214*; *see Kashranov, 2025 WL 3188399*, at *6; *see also Soto, 807 F. Supp. 3d 397, at 408*. Gaitan is not actively attempting to come into the United States. Gaitan has lived in the United States since 2005. (Doc. 1, at 4). Based on the plain meaning of the phrase "seeking admission," Gaitan sought admission when he entered the United States in 2005. (Doc. 1, at 4). Instead, § 1226(a) applies to applicants for admission, like Gaitan, who are not actively seeking admission but who have been residing in the United States for an extended period. *See e.g. Kashranov, 2025 WL 3188399*, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"). Accordingly, Hoover improperly detained Gaitan under § 1225(b), when he should have been detained under § 1226(a).

B. HOOVER VIOLATED GAITAN'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING GATIAN TO MANDATORY DETENTION.

Hoover's continued mandatory detention of Gaitan under § 1225(b)(2)(A) violates Gaitan's procedural due process rights. Gaitan avers that Hoover detaining him without the possibility of a bond hearing as required by § 1226(a) violates his procedural due process rights. (Doc. 1, at 6). Hoover counters that the due process rights of noncitizens within the

United States are limited to those rights and protections set forth by Congress. (Doc. 6, at 40-43).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Gaitan's favor because Hoover has deprived Gaitan of his physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects"); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Gaitan's favor because Gaitan remains erroneously detained without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29,

2025)); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Gaitan's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Hoover does not allege that Gaitan poses a flight risk or danger to the community and does not present any evidence that Gaitan has a criminal record. (*See* Doc. 6). As each *Mathews* factor weighs in Gaitan's favor, Hoover's mandatory detention of Gaitan under § 1225(b)(2)(A) violates Gaitan's procedural due process rights. Accordingly, Gaitan's petition for writ of habeas corpus is **GRANTED**, and Hoover is **ORDERED** to release Gaitan from custody.[5]

V.    <u>CONCLUSION</u>

For the foregoing reasons, Gaitan's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Hoover is **ORDERED** to release Gaitan from custody. Hoover is also permanently enjoined from re-detaining Gaitan under § 1225(b). Gaitan may move to reopen this matter

---

[5] The Court notes that Hoover requests the Court order a bond hearing in the alternative to release. (Doc. 6, at 17, 44). The Court declines this request because Gaitan was detained under the wrong statute and release is the appropriate remedy. *See Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *6-7 (M.D. Pa. Dec. 8, 2025) (ordering release); *see also Gonzalez Centeno v. Lowe*, No. 3:25CV2518, 2026 WL 94642, at *4 (M.D. Pa. Jan. 13, 2026) (same); *see also Quispe v. Rose*, No. 3:25-CV-02276, 2025 WL 3537279, at *8 (M.D. Pa. Dec. 10, 2025) (same).

if Hoover seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing. Gaitan's motion for a temporary restraining order and preliminary injunction is **DENIED as moot**. (Doc. 7; Doc. 8). The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: May 11, 2026

*/s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

14